# UNITED STATES DISTRICT COURT

## Northern District of California

### San Francisco Division

| | |
|---|---|
| LOUISIANA PACIFIC CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MONEY MARKET 1 INSTITUTIONAL INVESTMENT DEALER, et al.,<br><br>Defendants.<br>_____/ | No. C 09-03529 JSW (LB)<br><br>**ORDER REGARDING (1) LP AND DBSI'S FIVE PENDING JOINT DISCOVERY DISPUTE LETTERS, AND (2) LP'S AND DBSI'S ADMINISTRATIVE MOTIONS FOR LEAVE TO FILE PORTIONS OF THREE OF THE LETTERS UNDER SEAL**<br><br>[Re: ECF Nos. 239, 247, 251, 253, and 264] |

## I. INTRODUCTION

Plaintiff Louisiana Pacific Corporation ("LP" or "Plaintiff") sued Money Market 1 Institutional Investment Dealer ("MM1"), Merrill Lynch & Co., Inc., Merrill Lynch Pierce Fenner & Smith Incorporated (collectively, the "Merrill Lynch Defendants"), and Deutsche Bank Securities, Inc. ("DBSI") for violating federal and state securities laws. The Judicial Panel on Multidistrict Litigation transferred LP's claims against the Merrill Lynch Defendants to the United States District Court for the Southern District of New York, leaving only LP's claims against MM1 and DBSI in this district. On August 22, 2012, Judge White, the presiding judge in the case, referred all discovery disputes in the case to this court for resolution.

The court previously issued an order resolving three of the parties' joint discovery dispute

C 09-03529 JSW (LB)
ORDER

letters. 9/10/2012 Order, ECF No. 234. That order and Judge White's March 28, 2011 order provide the factual and procedural context for the case. *See id.*; 3/28/11 Order, ECF No. 132.

Since then, the LP and DBSI submitted five more joint discovery dispute letters. *See* 9/18/2012 Administrative Motion, (re: 9/18/2012 Joint Letter), ECF No. 239; 10/24/2012 Administrative Motion (re: 10/24/2012 Joint Letter), ECF No. 247; 11/1/2012 Administrative Motion (re: 11/1/2012 Joint Letter), ECF No. 251; 11/2/2012 Joint Letter, ECF No. 253; 11/14/2012 Joint Letter, ECF No. 264.[1] In the 11/14/2012 Letter, LP and DBSI inform the court that they have reached a tentative settlement agreement and request that the court "stay its decision" on their pending discovery disputes. 11/14/2012 Letter, ECF No. 264 at 1. Because the settlement agreement is tentative, and because the court spent considerable time and effort reviewing the pending discovery letters, the court nevertheless provides the following guidance. Thus, upon consideration of the papers submitted, the court rules as follows.[2]

## II. BACKGROUND

The court starts with the 9/18/2012 letter, which gives context to the other letters, too. In it, LP requests an order compelling DBSI to further respond to certain of LP's interrogatories and requests for production of documents ("RFP") about profits that DBSI made on hedges.

On a very high-level, the dispute is about access to discovery about money that DBSI may have made by entering into hedges with third parties. From the complaint and discovery letter, the

---

[1] The parties' September 18, 2012, October 24, 2012, and November 1, 2012 joint discovery dispute letters were lodged with the court, rather than filed in the public docket, because LP and DBSI request that portions of those letters, and several exhibits attached to them, be filed under seal. 9/18/2012 Administrative Motion, (re: 9/18/2012 Joint Letter), ECF No. 239; 10/24/2012 Administrative Motion (re: 10/24/2012 Joint Letter), ECF No. 247; 11/1/2012 Administrative Motion (re: 11/1/2012 Joint Letter), ECF No. 251. The court agrees that the portions of the letters and the exhibits to them that LP and DBSI seek to file under seal are properly designated as (at least) confidential. As such, these three administrative motions are **GRANTED**. LP and DBSI shall file the letters and exhibits under seal in accordance with the procedures set forth in Civil Local Rule 79-5 and General Order 62.

[2] Pursuant to Civil Local Rule 7-1(b), as well as the parties' request, see 11/14/2012 Letter, ECF No. 264 at 1, the court finds these matters suitable for determination without oral argument and **VACATES** the November 15, 2012 hearing.

C 09-03529 JSW (LB)
ORDER
2

context for this is as follows.  LP is suing DBSI for – among other things – not disclosing its market maker activities in connection with the marketing of Auction Rate Securities ("ARS").  ARSs trade at regular auctions and are meant to be relatively liquid (with characteristics approximating a cash-like instrument).  LP alleges that DBSI did not disclose its practice of placing support bids for the auctions, which meant that – until DBSI discontinued its practice – the auction markets cleared and looked more liquid than they were (lulling investors like LP into investing).  Also, as shown on page 41 of the second amended complaint, the issuer of the ARS took investor proceeds and put them in a special purpose vehicle ("SPV") that in turn bought medium-term European notes (presumably carrying a higher interest rate but with less liquidity), and LP presumably thinks that defeats the point of a liquid ARS investment.  Also, the SPVs entered into credit default swaps (insurance-like instruments) with DB London that would pay if a certain percentage of the pool of securities listed in Paragraph 101 of the Second Amended Complaint suffered triggering credit events.  Another part of this – and the context for the discovery dispute – is that DBSI entered into hedging transactions with third parties.  LP's perspective is that the ARS-CDS set-up facilitated DBSI's entering into these hedges, the hedges are profitable, and that profit is relevant to show DBSI's motivating scienter in the ARS/medium-term note/CDS investment method.

The discovery disputes in the first letter (interrogatories and RFP) are about identifying (1) the hedging transactions that DBSI undertook, (2) the profit and loss (P & L) that DBSI and its parent company Deutsche Bank booked for the various components of the ARS, and (3) the extent to which the compensation of DBSI employees depended on the P & L.  9/18/2012 Letter at 1-2.  LP argues that because the hedges relate to (and were facilitated by) the swaps, they are entitled to see how profitable the hedges are (as opposed to profit's being limited to only the fees from the ARSs or the insurance premiums from DB London).  DBSI responds that they book hedges (and the associated profits or losses) on a "book" basis, meaning, they have a book of positions in everything they do and hedge based on the book.  *Id.* at 3-4.  "Unscrambling" the book to attribute hedges and profits to ARSs is not possible.  *Id.*

The parties dispute the relevancy of deposition testimony by Amit Jain, the correlation coordinator who was responsible for ensuring that DBSI was hedged in a way that DBSI deemed

1  appropriate. He testified that DBSI booked hedges to the book of business but also suggested that
2  some booking of P & L for "Day 1 hedges" (presumably the day that DBSI entered into a CDS)
3  could be ascertained but that it became more difficult on ensuing days because there is no longer a
4  clear nexus between the CDS and the hedge. *Id.* at 4.

The 10/24/2012 Letter contains LP's disputes about the sufficiency of a Rule 30(b)(6) witness's answers to questions about DBSI's bidding practices and policies. *See* 10/24/2012 Letter. The 11/1/2012 Letter is mostly about DBSI's objection to the sufficiency of LP's Rule 30(b)(6) witness's responses to questions about LP's knowledge that ARSs were not really cash equivalents and that broker dealers could (but did not have to) bid to prevent a failed auction (and what MM1 and private placement memoranda did or did not say about the liquidity and other risks). *See* 11/1/2012 Letter. DBSI also disputes the sufficiency of LP's responses to whether LP tried to sell the DBSI ARS on the secondary market (and cover its losses). *See id*. The 11/2/2012 Letter is DBSI's request to compel production of emails and other electronic documents relevant to LP's claim for consequential damages from its inability to sell the ARS at issue in the case. *See* 11/2/2012 Letter, ECF No. 253. And the 11/14/2012 Letter is LP and DBSI's notification that they have reached a tentative settlement agreement. *See* 11/14/2012 Letter, ECF No. 264.

### III. LEGAL STANDARD

Subject to the limitations imposed by subsection (b)(2)(C), under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. However, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the

discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). *See Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). In turn, the party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence. *See DirectTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002).

### IV. DISCUSSION

#### A. The September 18, 2012 Letter

The court's view is that DBSI's incentives are relevant, but it is not possible to show them in the way LP wants (documents and interrogatories aimed at identifying how DBSI booked hedges for components of the ARSs). DBSI hedges based on its book of business. Day 1 hedges provide some nexus to the ARS, but that nexus becomes attenuated right away. Also, a theoretical profit or loss on a trade or position may or may not be realized. Compensation structure and incentives vary, too. For example, someone on the ARS desk who brings in $90M in business has a bonus unrelated to hedges. Component parts do not necessarily get compensated on the basis of hedges.

Also, the court's view is that while relevant, the hedges are pretty attenuated to the ARS at issue in the case.

LP can make its point by pointing to the incentives generally rather than trying to break out a P & L approximation that necessarily relies at any given point on a huge number of assumptions. LP can select periods for documents to get some insight into the book of business that DBSI generated from its ARS and related activities.

#### B. The October 24, 2012 Letter

The topics for the Rule 30(b)(6) witness were topics 9, 11, 12, 14 and 17: DBSI's bidding practices, decision to stop placing bids, inventory, DBSI's purchase or sale in the secondary market, and disclosures about DBSI's role as broker-dealer. While it is true that LP is entitled to rely on a Rule 30(b)(6) deponent's interpretation of events (and pointing to documents does not satisfy the Rule 30(b)(6) witness's responsibility), the court questions whether LP can realistically expect better answers than the ones it got. As DBSI pointed out in the earlier dispute, the kinds of questions are

best answered by percipient witnesses and fact witnesses in the context of documents (e.g., emails, documents showing policies) about what was happening at the time and what was discussed. The court is not giving license to DBSI to hide behind what fact witnesses already said. The court reviewed the deposition testimony, and the Rule 30(b)(6) witness did give information about policies and decisions, the groups involved in making decisions, and drafting disclosures. But in the end, this lawsuit is about DBSI's trade of auction rate securities in 2007, and the trader and everyone in that chain of command left. When trading activities such as these stop, there are things that can be illuminated about what happened by a Rule 30(b)(6) witness, and there are things that cannot. The court's view is that the illumination probably was sufficient and might be better amplified with interrogatories. LP did not articulate prejudice sufficiently, either.

### C. The November 1, 2012 Letter

DBSI argues that LP's Rule 30(b)(6) witness could not or would not answer questions about certain documents relating to LP's knowledge about the market for ARSs generally. The court reviewed LP's Rule 30(b)(6) witness's answers and believes that they are sufficient.

### D. The November 2, 2012 Letter

DBSI argues that LP's production in response to certain of DBSI's RFPs is not sufficient. The emails and documents at issue here are about LP's inability to sell the auction-rate securities in 2007 and 2008 and that as a result, it had to engage in two financings in March 2009 and another in September 2009. LP says that it already produced documents in December 2011 but those documents apparently were focused on LP's purchases of ARSs. LP does not really argue relevance, and it argues primarily that it is a burden and late in the game for it to do additional searches.

Under the circumstances, 10,000 documents (the number of documents LP says it would have to review) is not an enormous universe to review. Consequential damages theories change, and the court's view is that the documents are relevant and that the burdens (with well-tailored searches) are not substantial. Summary judgment is not set until April 2013.

### E. The November 14, 2012 Letter

LP and DBSI notify the court that they have reached a tentative settlement and request that the

court stay its ruling on the pending discovery disputes and vacate the November 15, 2012. The court will vacate the hearing, but, given that the settlement is only tentative, the court will provide its guidance on the discovery disputes. If the case does not settle, and because the court has not heard oral argument from the parties on these disputes, the parties are free to submit new discovery letters on these issues, keeping in mind the guidance the court has provided in this order.

## V. CONCLUSION

The court rules on the various discovery requests as set forth above. If the case does not settle, the parties are free to submit new discovery letters on these issues.

This disposes of ECF Nos. 239, 247, 251, 253, and 264.

**IT IS SO ORDERED.**

Dated: November 14, 2012

_____
LAUREL BEELER
United States Magistrate Judge

C 09-03529 JSW (LB)
ORDER

7