1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| LOUISIANA PACIFIC CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MONEY MARKET 1 INSTITUTIONAL INVESTMENT DEALER,<br><br>Defendant. | Case No. 09-cv-03529 JSW (NC)<br><br>**REPORT AND RECOMMENDATION TO GRANT MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 281 |

Plaintiff Louisiana Pacific moves for default judgment under Federal Rule of Civil Procedure 55(b)(2) against defendant Money Market 1 for its alleged violations of Section 10(b) of the Securities Exchange Act of 1934, California Corporations Code §§ 25400 and 25401, acts of fraud and negligent misrepresentation, and breach of fiduciary duty. Louisiana Pacific requests over $36 million in damages. Judge White referred the motion to this Court, which RECOMMENDS that the district court GRANT the motion for default judgment and award Louisiana Pacific $36,080,286 in damages.

## I. BACKGROUND

**A.    Relevant Facts Alleged in the Second Amended Complaint**

Plaintiff Louisiana Pacific is a supplier and distributor of building products throughout the United States. Dkt. No. 136 at 2. Money Market 1 is a broker-dealer, which

first approached Louisiana Pacific about investing with it in 1999. *Id.* at 57.  Because
Louisiana Pacific routinely needed to access invested capital to run its business, it shared
with Money Market 1 its desire to invest conservatively, in short-term, liquid, and secure
investments. *Id.*

Louisiana Pacific alleges that Money Market 1's Senior Vice President Hal Johnson
represented that auction rate securities (ARS) were highly liquid and safe cash equivalents,
which posed virtually no risk of loss. *Id.* at 2, 58, 61.  Money Market 1 allegedly
represented that there was no real possibility of auction failure, that Louisiana Pacific would
be able to sell ARS on short notice, and that ARS met Louisiana Pacific's criteria for
investing. *Id.* at 58.  Over time, in reliance upon Money Market 1's representations and
recommendations, Louisiana Pacific invested more than $300 million in ARS through
Money Market 1. *Id.*

Louisiana Pacific alleges that Money Market 1 was aware that, in fact, there was no
liquid market for ARS. *Id.* at 4, 59.  Rather, the appearance of liquidity was entirely
dependent on intervention in the auction market by underwriters like Merrill Lynch and
Deutsche Bank, who ensured that the auctions did not fail by bidding on securities they
underwrote. *Id.* at 5, 59.  Money Market 1 had access to the ARS inventories and thus
could see that Merrill Lynch and Deutsche Bank were buying ARS in order to clear the
auctions. *Id.* at 60.  But, Money Market 1 never disclosed to Louisiana Pacific the
underwriters' participation in the auctions and never revealed that ARS were inconsistent
with Louisiana Pacific's investment priorities. *Id.* at 5, 59.  In addition, Money Market 1
did not disclose that ARS underwritten by Deutsche Bank were based on derivatives or that
ARS underwritten by Merrill Lynch were predicated on sub-prime mortgages. *Id.* at 60.
Louisiana Pacific further alleges that, in return for encouraging investors to acquire these
securities, Money Market 1 received substantial commission payments from Merrill Lynch
and Deutsche Bank. *Id.* at 6.

Prior to 2007, Louisiana Pacific was not aware that ARS were exposed to risky
investment structures or that the auctions functioned because of the underwriters' bidding

on their own securities. *Id.* at 63. Louisiana Pacific asserts that had it known the true characteristics of the ARS or the essential role that the underwriters played in the functioning of the auctions, it would not have acquired ARS for its working capital investments. *Id.* at 61. When the auctions failed beginning on August 7, 2007, Louisiana Pacific instructed its brokers to sell its ARS. *Id.* at 63, 66. Money Market 1 continued to represent the ARS as safe investments, however, and even assured Louisiana Pacific that it had no exposure to sub-prime securities. *Id.* at 63, 65. As late as December 2007, Money Market 1's Chief Executive Officer Lee Epstein assured Louisiana Pacific that ARS were a safe, liquid investment. *Id.* at 67.

Ultimately, the auction for each of these types of securities failed, and Louisiana Pacific was unable to sell its ARS underwritten by Deutsche Bank or Merrill Lynch. *Id.* at 67. Louisiana Pacific was left holding ARS underwritten by Deutsche Bank with a par value of $90,300,000 and ARS underwritten by Merrill Lynch with a par value of $55,575,000, all recommended investments by Money Market 1. *Id.* at 67. Because these assets were illiquid, Louisiana Pacific then borrowed credit to fund its operating expenses. *Id.* at 69.

**B.  Procedural History**

Louisiana Pacific sued Money Market 1, Deutsche Bank, and Merrill Lynch for the losses it incurred investing in ARS. *See generally* Dkt. No. 1. On December 8, 2009, Louisiana Pacific's claims against Merrill Lynch were transferred to the Southern District of New York. *See* Dkt. No. 79 at 2. Deutsche Bank was dismissed from this action on December 11, 2012, after settling with Louisiana Pacific. *See* Dkt. No. 269. Money Market 1 is the only remaining defendant in this action.

Louisiana Pacific alleges that Money Market 1 (1) violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5; (2) violated California Corporations Code §§ 25400 and 25401; committed (3) fraud and (4) negligent misrepresentation; and (5) breached its fiduciary duty to Louisiana Pacific. Dkt. No. 136 at 72-73, 79-80, 85-87, 90-92. Louisiana Pacific served its first complaint on Money Market 1 on August 13, 2009.

1   Dkt. Nos. 1, 3.  Louisiana Pacific filed an amended complaint on March 8, 2010, which

2   Money Market 1 moved to dismiss, arguing that Louisiana Pacific had failed to plead

3   sufficient facts to state a claim for relief under the Private Securities Litigation Reform Act

4   (PSLRA) and Federal Rule of Civil Procedure 9(b).  Dkt. Nos. 86, 95.

5          Judge White denied Money Market 1's motion.  Dkt. No. 132.  Judge White found

6   that Louisiana Pacific had pleaded a plausible claim under Section 10(b) by alleging that it

7   purchased unsuitable investments based on Money Market 1's misrepresentations and that

8   Louisiana Pacific had adequately pleaded its state law claims based on the same

9   misrepresentations by Money Market 1.  *Id.* at 15-16.

10         On May 20, 2011, Louisiana Pacific filed a second amended complaint, adding

11  additional facts to its claims against Deutsche Bank, but alleging the same five claims

12  against Money Market 1.  Dkt. No. 136.  Money Market 1 answered on July 8, 2011.  Dkt.

13  No. 148.

14         On November 8, 2011, Money Market 1 failed to participate in a Federal Rule of

15  Civil Procedure 26(f) conference and subsequently informed Louisiana Pacific that it would

16  not serve its initial disclosures.  *See* Dkt. No. 167.  On May 1, 2012, Judge White ordered

17  Money Market 1 to show cause why it had failed to comply with its discovery obligations.

18  Dkt. No. 187.  On May 10, 2012, Money Market 1 filed a statement stating that it is "non-

19  operational, has no assets, is dissolved, and because it has expressly requested that Arent

20  Fox LLP cease all legal work and withdraw as counsel in this action, Money Market 1 is no

21  longer in a position to comply with any discovery requests in this action."  Dkt. No. 188 at

22  2.  Arent Fox LLP, Money Market 1's counsel, then moved to withdraw.  Dkt. No. 189.  On

23  September 7, 2012, Judge White held a hearing on the motion to withdraw and stated that

24  Money Market 1's failure to retain new counsel would result in a default entered against it.

25  *See* Dkt. No. 232.  Judge White granted the motion to withdraw, and ordered Money

26  Market 1 to notify the court by September 28, 2012, regarding the status of its attorney

27  representation or have default entered against it.  Dkt. No. 233 at 2.

28  //

1    The deadline for Money Market 1 to secure new counsel has long passed.  On January

2    23, 2013, the clerk entered default against Money Market 1.  Dkt. No. 275.  Louisiana

3    Pacific now moves for default judgment against Money Market 1 as to all claims and seeks

4    damages under California Corporations Code § 25501.  Dkt. No. 281.

5    Judge White referred the motion to this Court for a report and recommendation under

6    Civil Local Rule 72-1.  Dkt. No. 277.  Money Market 1 has not sought to set aside default

7    or filed an opposition to the motion for default judgment.

8                              **II. LEGAL STANDARD**

9    Default may be entered against a party who fails to plead or otherwise defend an

10   action and against whom a judgment for affirmative relief is sought. Fed. R. Civ. P. 55(a).

11   After entry of default, the Court has discretion to grant default judgment on the merits of the

12   case. Fed. R. Civ. P. 55(b); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In

13   deciding whether to grant default judgment, the Court considers the following factors:

14   (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive

15   claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action;

16   (5) the possibility of a dispute concerning material facts; (6) whether the default was due to

17   excusable neglect; and (7) the strong policy favoring decisions on the merits.  *Eitel v.*

18   *McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  The factual allegations of the complaint,

19   except those concerning damages, are deemed admitted by the non-responding parties.

20   *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).  The moving party bears the

21   burden of proving damages through testimony, written affidavit, or other relevant evidence.

22   *See Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222,

23   1226 (N.D. Cal. 2005).

24                              **III. DISCUSSION**

25   **A.    Jurisdiction**

26   When presented with a motion for default judgment, the court has "an affirmative

27   duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*,

28   172 F.3d 707, 712 (9th Cir. 1999).  Here, the Court has subject matter jurisdiction over this

Case No. 09-cv-03529 JSW (NC)
REPORT AND RECOMMENDATION                    5
TO GRANT DEFAULT JUDGMENT

1  action under 28 U.S.C. § 1331 because the complaint alleges violations of the 1934 Act.

2  Dkt. No. 281 at 3.  Louisiana Pacific's claims under California law are properly before this

3  Court under 28 U.S.C. § 1367, because they are so related to Louisiana Pacific's claims

4  under federal law that they form part of the same case or controversy.

5  The Court also has personal jurisdiction over the defendant in default.  Money

6  Market 1 was a California corporation with its principal place of business in San Francisco,

7  which operated as a California-licensed securities broker-dealer. Dkt. No. 1 at 6-7; *see also*

8  Dkt. No. 148 at 5.  Moreover, Money Market 1 waived any defense to this Court's exercise

9  of personal jurisdiction by not raising it in its motion to dismiss. *See* Dkt. No. 95.

10  **B.    Default Judgment**

11  The *Eitel* factors support a finding of default judgment.

12  **1.    Prejudice to the plaintiff**

13  The first factor the Court considers is the possibility of prejudice to a plaintiff if

14  default judgment is not granted.  *Eitel*, 782 F.2d at 1471.  If denying default judgment

15  would leave plaintiff without a remedy, this factor weighs in favor of granting default

16  judgment.  *United States v. Cathcart*, No. 07-cv-4762 PJH (JCS), 2010 WL 1048829 (N.D.

17  Cal. Feb. 12, 2010) *report and recommendation adopted by*, No. 07-cv-4762 PJH, 2010 WL

18  807444 (N.D. Cal. Mar. 5, 2010); *see also Schenker, Inc. v. Predator Mogulwear Inc.*, No.

19  07-cv-01795 WHA, 2007 WL 4556915, *2 (N.D. Cal. Dec. 20, 2007) (finding that plaintiff

20  alleging breach of contract would be prejudiced if default judgment were not entered in its

21  favor where a corporate defendant had disregarded a court order to obtain new counsel and

22  had failed to defend itself).  Money Market 1 disregarded Judge White's order to obtain

23  new counsel, which is necessary to its participation in the litigation, and has failed to

24  participate in any stage of the case since September 2012.  Louisiana Pacific has no other

25  remedy to recover the $36 million alleged in damages and thus has been prejudiced by

26  Money Market 1's failure to participate.  The first factor therefore weighs in favor of

27  granting default judgment.

28  //

### 2. Sufficiency of the complaint and likelihood of success on the merits

Under the second and third *Eitel* factors the Court must examine whether Louisiana Pacific has pleaded facts sufficient to establish and succeed upon its claims. *Eitel*, 782 F.2d at 1471-72. The PSLRA imposes a heightened pleading standard in securities litigation and requires a plaintiff to state with particularity the misleading statement, the reason why the statement is misleading, and the facts showing defendant's intention to deceive. *In re Cutera Secs. Litig.*, 610 F.3d 1103, 1107-08 (9th Cir. 2010). Where a plaintiff alleges fraud, Federal Rule of Civil Procedure 9(b) requires the plaintiff to state with particularity the circumstances constituting fraud and "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (citation and internal quotation marks omitted). After *Iqbal*, a pleading of fraud or mistake must also plead plausible allegations. *Id.*

Judge White, in denying Money Market 1's motion to dismiss Louisiana Pacific's first amended complaint, found that Louisiana Pacific had sufficiently stated a § 10(b) claim by "alleging that the securities it purchased on Money Market 1's advice and recommendation were unsuitable and that the misrepresentations and omissions in question related to the suitability of those securities." Dkt. No. 132 at 15. Judge White found that "according to the plain and numerous allegations in the complaint, Money Market 1 failed to disclose that the complicated structured investments fell outside of the scope of Louisiana Pacific's investment guidelines." *Id.* at 16. Likewise, because Louisiana Pacific's state law claims against Money Market 1 were based on the same alleged conduct as its federal claims, Judge White found that Louisiana Pacific had pleaded sufficient facts to show a plausible claim for relief under California law for each of its state law claims. *See* Dkt. No. 132 at 16.

Under the law of the case doctrine, a court may not reexamine an issue previously decided by the same court, or a higher court, in the same case "in order to maintain consistency during the course of a single lawsuit." *United States v. Smith*, 389 F.3d 944,

948 (9th Cir. 2004) (internal citation and quotation marks omitted).  Judge White denied

Money Market 1's motion to dismiss Louisiana Pacific's first amended complaint in its

entirety because he found Louisiana Pacific's claims legally sufficient.  Dkt. No. 132.

Louisiana Pacific did not amend its claims against Money Market 1 when it filed its second

amended complaint.  Indeed, Louisiana Pacific alleges the same claims against Money

Market 1 in the second amended complaint as it alleged in the first amended complaint.

Therefore, the Court is bound by Judge White's earlier finding that Louisiana Pacific has

pleaded sufficient facts to state a plausible claim against Money Market 1.  Thus the

sufficiency of Louisiana Pacific's claims and the likelihood that Louisiana Pacific could

succeed on these well-pleaded claims weigh in favor of entering default judgment against

Money Market 1.

### 3.     Possibility of a dispute of material fact

The Court next considers whether the complaint as pleaded presents the possibility of

a dispute concerning material facts under the fourth *Eitel* factor.  *Eitel*, 782 F.2d at 1471-72.

Judge White previously observed that a dispute of fact existed over whose responsibility it

was to appreciate the inherent risks of ARS—Money Market 1 as the broker-dealer, or

Louisiana Pacific, as a sophisticated investor.  Dkt. No. 132 at 16.  Louisiana Pacific

bolstered its statements that it was completely unaware of such risks and relied on Money

Market 1's representations in its second amended complaint.  *See* Dkt. No. 136 ¶¶ 152-57.

Money Market 1's answer to the second amended complaint again raises the

possibility of a dispute of fact, namely, whether its statements were misleading and whether

it possessed the requisite intent to defraud Louisiana Pacific.  Money Market 1 denied "each

and every allegation and assertion" in the second amended complaint, except to admit that

Louisiana Pacific did invest in ARS.  Dkt. No. 148 at 2.  Specifically, Money Market 1

denied that it made false representations and claimed it acted in good faith without the

intent to defraud or deceive Louisiana Pacific.  *Id.* at 14.  Money Market 1 further asserted

that Louisiana Pacific knew how the auctions for the securities operated, including that the

//

1  security issuer might bid in auctions for its own account. *Id*. at 15.  Given the dispute over

2  these material facts, this factor weighs against entering default judgment.

3  **4.      Excusable neglect**

4  Excusable neglect is an equitable concept and "takes account of factors such as

5  'prejudice, the length of the delay and impact on judicial proceedings, the reason for the

6  delay, including whether it was within the reasonable control of the movant, and whether

7  the movant acted in good faith.'" *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696

8  (9th Cir. 2001) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380,

9  395 (1993)).  Generally, courts will not find a defendant's failure to participate excusable

10  where the defendant has been properly served and has notice of the entry of default and the

11  motion for default judgment. *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.

12  Supp. 2d 995, 1005 (N.D. Cal. 2001).  Here, Money Market 1 was properly served with the

13  second amended complaint, entry of default, and the motion for default judgment by

14  electronic filing. *See* Dkt. Nos. 136, 275, and 281; *see also* Fed. R. Civ. P. 5(b)(3)

15  (permitting a party to use electronic filing to effect service if a local rule so authorizes).

16  Yet, Money Market 1 has failed to defend itself.

17  Moreover, Judge White warned Money Market 1 that its failure to obtain new counsel

18  and participate in this action would be grounds for entry of default.  Dkt. Nos. 232, 233.

19  Default is a permissible sanction for failure to comply with local rules requiring

20  representation by counsel. *See United States v. High Country Broad. Co., Inc.*, 3 F.3d 1244,

21  1245 (9th Cir. 1993); *Emp. Painters' Trust v. Ethan Enters., Inc.*, 480 F.3d 993, 998 (9th

22  Cir. 2007).  Nevertheless, Money Market 1 has not replaced its counsel nor participated in

23  this action as ordered.  Money Market 1's knowing failure to follow court orders and to

24  participate further shows that its conduct is not excusable neglect.  This factor weighs in

25  favor of default judgment against Money Market 1.

26  **5.      Policy favoring a decision on the merits**

27  There is a strong policy favoring decisions on the merits that weighs against entering

28  default judgment. *Eitel*, 782 F.2d at 1472.  The existence of Federal Rule of Civil

1    Procedure 55(b), however, shows that this policy is not dispositive. *Kloepping v. Fireman's*
2    *Fund*, No. 94-cv-2684 TEH, 1996 WL 75314, *3 (N.D. Cal. Feb. 13, 1996).  And, where a
3    defendant's failure to appear makes a decision on the merits impracticable, if not
4    impossible, entry of default judgment is warranted. *Craigslist, Inc. v. Naturemarket, Inc.*,
5    694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010) (internal citation and quotation marks
6    omitted).  Money Market 1's failure to make disclosures, to obtain counsel so that it may
7    appear in court, and to defend itself against Louisiana Pacific's claims makes a decision on
8    the merits impractical.  This factor therefore weighs in favor of default judgment.

9        **6.    Money at stake**

10       Under this factor, "the Court must consider the amount of money at stake in relation
11   to the seriousness of [d]efendant's conduct." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F.
12   Supp. 2d 1038, 1050 (N.D. Cal. 2010).  "If the sum of money at issue is reasonably
13   proportionate to the harm caused by the defendant's actions, then default judgment is
14   warranted." *Walters v. Statewide Concrete Barrier, Inc.*, No. 04-cv-02559 JSW (MEJ),
15   2006 WL 2527776, *4 (N.D. Cal. Aug. 30, 2006).  Default judgment is appropriate without
16   a hearing if the damages sought are a liquidated sum or capable of mathematical
17   calculation. *See Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981).  In determining if
18   the amount at stake is reasonable, the court may consider plaintiffs' declarations,
19   calculations, pay stubs, and other documentation of damages. *See Truong Giang Corp. v.*
20   *Twinstar Tea Corp.*, No. 06-cv-03594 JSW, 2007 WL 1545173, *12 (N.D. Cal. May 29,
21   2007).

22       In it motion for default judgment, Louisiana Pacific seeks over $36 million in
23   damages under California Corporations Code § 25501. *See* Dkt. No. 281 at 5-7.  Section
24   25501 allows a plaintiff to recover "the difference between (a) the price at which the
25   security was bought plus interest at the legal rate from the date of purchase and (b) the value
26   of the security at the time it was disposed of by the plaintiff plus the amount of any income
27   received on the security by the plaintiff."  In support of its damages figure, Louisiana
28   Pacific submits documentation of the purchases and sales of the securities underwritten by

Deutsche Bank that it bought based on Money Market 1's representations. *See* Dkt. Nos. 283-84. Louisiana Pacific bought a total of $90,300,000 in unsuitable ARS underwritten by Deutsche Bank. Dkt. No. 284-1. Under California law, Louisiana Pacific is entitled to interest on these securities at a rate of seven percent from the date of the purchase. Cal. Corp. Code § 25501 ("plus interest at the legal rate from the date of sale"); Cal. Const. art. XV, § 1 (setting interest at seven percent per year). Interest on the various purchases of ARS comes to $18,134,679. Dkt. No. 284-1. Louisiana Pacific realized $9,062,093 in income from the ARS, but ultimately sold the securities, at a loss, for $43,292,300. *Id.* Louisiana Pacific has further offset its damages calculation by the amount of its settlement with Deutsche Bank ($20,000,000).

| | |
|---|---|
| Purchase Price | $ 90,300,000 |
| Interest | $ 18,134,679 |
| § 25501(a) Subtotal | $108,434,679 |
| | |
| Sale Price | ($ 43,292,300) |
| Income | ($ 9,062,093) |
| § 25501(b) Subtotal | ($ 52,354,393) |
| | |
| Total Damages Under § 25501 | $ 56,080,286 |
| Deutsche Bank Settlement | ($ 20,000,000) |
| **Total Damages Sought**[1] | **$ 36,080,286** |

An entry of default judgment may not be appropriate where a large sum of money is at stake. *See Eitel*, 782 F.2d at 1472 (denying default judgment where plaintiff sought almost three million dollars for attorney malpractice and other factors weighed against entering default judgment). Although a considerable amount of money is at stake here, Louisiana Pacific is only seeking one measure of the damages it could have sought had this case proceeded to trial. Louisiana Pacific's asserted claims against Money Market 1 give rise to several different measures for damages, such as out of pocket losses, and the benefit of the bargain damages. These measures often require expert testimony to prove, and Louisiana Pacific was denied the opportunity to seek these damages at trial because of

---

[1] Louisiana Pacific's motion requests $36,080,287, which is $1 more than the sum of its damages.

Money Market 1's failure to defend itself in this action. Instead, Louisiana Pacific seeks a specific sum, easily calculated under § 25501. Moreover, the amount of damages is consistent with a default judgment of $37,742,192 entered against Money Market 1 in the Southern District of New York for its role in selling ARS underwritten by Merrill Lynch to Louisiana Pacific. *See* Dkt. No. 286 at 2.

In sum, the Court finds that Louisiana Pacific has shown that is claim for damages is proportional to the harm it suffered because of Money Market 1's misrepresentations of the risks involved in investing in ARS. The damages sought are therefore reasonable, and this factor weighs in favor of entering default judgment against Money Market 1 in the amount of $36,080,286.

## IV. CONCLUSION

On balance, the *Eitel* factors weigh in favor of entering default judgment, and so the Court RECOMMENDS that the district court GRANT Louisiana Pacific's motion for default judgment. Because the Court finds that Louisiana Pacific has shown the damages it seeks are reasonable and proportionate to the harm caused by Money Market 1, the Court RECOMMENDS that judgment in favor of Louisiana Pacific against Money Market 1 be entered in the amount of $36,080,286.

Any party may object to this order within fourteen days under Federal Rule of Civil Procedure 72(b).

IT IS SO ORDERED.

Date: July 8, 2013

Nathanael M. Cousins
United States Magistrate Judge